IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LOREN NETHERS,

    Petitioner,                       CASE NO. 2:09-CV-324
                                            JUDGE FROST
v.                                    MAGISTRATE JUDGE ABEL

EDWARD SHELDON, WARDEN,

    Respondent.

## REPORT AND RECOMMENDATION

Petitioner Loren Nethers, a state prisoner, brings action for a writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the Magistrate Judge on the instant petition, respondent's return of writ, petitioner's traverse, respondent's reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> For approximately a ten year period commencing in 1997, Appellant allegedly sexually abused his three daughters: Erica Wood, Erin Wood, and Crystal Nethers.
>
> These allegations were initially brought by Michael Day an ex-boyfriend of Erin Wood. Mr. Day alleged that he had a conversation with Erin Wood where she said she was sexually abused by her father. Immediately after such conversation, Mr. Day revealed the information to Adrian Wood, Erin's mother. When Ms. Wood failed to take any action, Mr. Day reported the allegations to the Licking County Sheriff. As a result of the

allegations, the Sheriff and Children's Services began an investigation, and removed the minor children from the home.

At trial Mr. Day testified that he in fact had made the initial complaint to the Licking County Sheriff. Detective Chris Barbuto of the Licking County Sheriff's Office testified that he contacted Adrian Wood and requested that she bring Erin to his office for an interview. Ms. Wood complied and brought both Erin and Erica Wood with her to the interview. Afterwards, Adrian, Erica, Erin and Crystal were taken by Jennifer Burke, a social worker for Licking County Children Services, to the Licking County Job And Family Services building. The minor children were then immediately placed in foster care. Adrian and Erica returned home.

Subsequently, Mr. Nethers was interviewed by Detective Barbuto, at which time he denied the allegations of sexual abuse.

Appellant was indicted on three counts of sexual battery in violation of R.C. § 2907.03(A)(5), three counts of rape in violation of R.C. § 2907.02(A)(1)(b), and eight counts of gross sexual imposition in violation of R.C. § 2907.05(A)(4).

On January 16, 2007, pursuant to R.C. § 2907.02(E), a rape shield hearing was held. At that time neither the prosecution nor Appellant indicated a desire to have a rape shield hearing. (R.S. Hearing T. at 3).

On January 22, 2007, a change of plea hearing was held. At that time Appellant withdrew his previously entered not guilty pleas and entered into a negotiated plea agreement. As part of the plea, Appellant pled guilty to eight (8) counts of gross sexual imposition, felonies of the 3rd degree. The State requested to nolle prosequi Counts 1 through 7, and recommended concurrent sentences on the eight (8) counts. The State further recommended that less than the maximum prison sentence be imposed. Finally, the State agreed not to pursue any type of charges against the mother, Adrian Wood, for either permitting or failing to report the underlying allegations and fact patterns of the case. (Change of Plea Hrng.

at 3-4).

Pursuant to Crim.R. 11, the trial court entered into a colloquy with Appellant to ascertain whether the change of plea was freely, knowingly, and voluntarily made. While under oath, after recitation of the facts by the State, Appellant agreed with the facts, admitted his guilt, and acknowledged that his change of plea was freely, knowingly, and voluntarily made.

On February 23, 2007, Appellant filed a motion to withdraw his guilty plea.

On February 27, 2007, a hearing on Appellant's motion to withdraw his guilty plea was held. At said hearing, Appellant's counsel advised the trial court that Appellant "has no ability to read and write" (Motion hrng. T. at 4), that he was mentally retarded, and that Appellant went along with the change of plea "because he was simply scared." (Motion hrng. T at 4). Appellant testified at the hearing that: he could not read or write, and receives social security as he is classified mentally retarded. Appellant's sister also testified to verify Appellant's claim (Motion Hrng. T at 17). Notwithstanding the State's protestation to the contrary, the trial court allowed Appellant to withdraw his plea. In doing so, however, all previously dismissed charges were revived. (Motion Hrng. T at 27).

On May 1, 2007, this matter came for trial.

At trial, Erica Wood testified that her father began having sexual intercourse with her when she was in middle school. She then went on to deny that she had in fact had sexual intercourse with her father, and that her statements to authorities were in fact lies.

Crystal Nethers testified at trial that her father had touched her in places where she did not want to be touched (T. at 111-112).

After Crystal's testimony, a break was taken, and it was discovered that one of the jurors, Mr. Lucas, recognized Adrian Wood, a potential witness. Upon voir dire Mr. Lucas disclosed that he drove a school bus, and had previously seen Adrian

3

and Erin Wood getting on and off of other buses. He also held a door open for them and asked them "how they had been doing". (T. at 119). Mr. Lucas also testified that any knowledge he had would not affect his ability to be a fair and impartial juror in the case. (T. at 116). Mr. Lucas was allowed to continue in the trial proceeding without objection from counsel.

Upon continuing her testimony, Crystal stated that the sexual abuse by her father began around Thanksgiving, 2005 and continued until she was taken from the home.

The defense then called Erin Wood, who recanted the story she told to Detective Barbuto and denied any sexual molestation by her father.

Mr. James Noblick testified that he had never seen any molestation of Crystal by Appellant and that Crystal's reputation for honesty was that "she-is not very honest." (T. at 163).

Tammy Sparks testified that her daughter Tabitha Sparks was Crystal's friend since the second grade, and that Crystal's reputation for being truthful or untruthful was "I know that she's been known as a troublemaker, but being truthful and untruthful, I'm not too sure. I haven't heard much about that." (T. at 166).

Adrian Wood was called by the defense, but delayed her testimony until she was able to obtain and consult with an attorney.

Appellant testified in his own behalf. He testified that Crystal failed to testify truthfully, and denied sexually abusing Erica. He also denied sexual contact with Erica.

Upon cross-examination, Appellant stated that the allegations were "all because of the fact that you're trying to bring Erin and Michael up?"

At trial, a tape was played in which Appellant had a conversation with Erica and Adrian Wood regarding testimony

at trial. Appellant admitted that the voices on the tape were his and Erica's. Appellant denied attempting to influence her testimony, and stated that he was merely attempting to explain what was going on. He also claimed that his conversations with Adrian were merely an attempt to further that goal. Appellant unsuccessfully objected to the use of the tape (T. at 190), as the trial court noted the tape was being utilized for "rebuttal, and that Appellant could have indicated to counsel that he had made phone calls while in the county jail." (T. at 190).

A short recess was granted at the conclusion of cross-examination, and prior to concluding the trial, defense counsel was allowed to listen to the tapes in their entirety. (T. at 190).

Adrian Wood retook the stand and testified that she wanted Erica to testify to the truth. Ms. Wood testified that she told Crystal "to go in and tell him [Barbuto] that he [Appellant] had touched her" because she was mad and wanted to cause trouble in order to resolve a child support issue. (T. at 202).

Without the benefit of having heard the taped jailhouse telephone calls, Ms. Wood testified that she did not try to pressure her daughters with regard to their testimony and denied trying to coach or influence Erica as to what she was supposed to say. (T. at 211).

Appellant's nephew and niece testified in his behalf. Rodney Nethers testified that Crystal was his cousin, and that her reputation for being a truthful or untruthful person was that "she's a untruthful person." (T. at 213). Mr. Chad Dondrea also testified that Crystal had a reputation as "a very untruthful person." (T. at 215). Amanda Dondrea likewise testified that Crystal was "most of the time untruthful." (T. at 217).

Finally, Tamara Jo Mason was called to rebut the testimony of Adrian Wood. Ms. Mason testified that while crying, Adrian told her that she was in a position where she had to make a choice between her daughters and Loren, and she said I choose Loren. (T. at 222).

5

> At the close of the State's case, the prosecutor moved the trial court to dismiss counts 1, 2, 3, and 7. Having no objection, the trial court granted the motion to dismiss said counts. At the close of the defendant's case, counsel for the defendant made a Crim.R. 29 Motion For Acquittal of counts 4, 5 and 6, and 8 through 15. The court granted the motion for acquittal as to count 4. The court denied the motion for acquittal as to counts 5, 6, and 8 through 15.
>
> On May 31, 2007, the trial court entered a Judgment Entry specifying the counts for which Appellant was found guilty, and the level of offense contained in the indictment for each count (i.e. rape 1st degree felony, 8 counts of GSI, felonies of the 3rd degree).
>
> On June 4, 2007, the trial court sentenced Appellant on counts 5, 6 and 8-15. Appellant was sentenced to two years in prison on each count for counts 5 and 6. He was also sentenced to a prison term of 1 year on each count for counts 8 through 15. All sentences were ordered to run consecutively. (Sentencing Judgment Entry filed June 5, 2007).

*State v. Nethers*, 2008 WL 2572105 (Ohio App. 5th Dist. June 4, 2008). Represented by new counsel, petitioner filed a timely appeal in which he raised the following assignments of error:

> 1. EVALUATION TO DETERMINE HIS COMPETENCY TO STAND TRIAL RESULTED IN INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> 2. APPELLANT WAS DENIED STATUTORY RIGHTS.
>
> 3..APPELLANT WAS SENTENCED IN CONTRAVENTION OF LAW.

On June 4, 2008, the Ohio appellate court affirmed the trial court's judgment. Petitioner did not timely appeal; however, on August 15, 2008, petitioner filed a motion for delayed

6

appeal, which motion the Ohio Supreme Court granted. *See Exhibits 11, 12 to Return of Writ; State v. Nethers,* 119 Ohio St.3d 1470 (2008). On November 6, 2008, the Ohio Supreme Court thereafter sua sponte dismissed petitioner's appeal for failure to prosecute because he failed to timely file a memorandum in support of jurisdiction that complied with the Rules of the Ohio Supreme Court. *Exhibit 13 to Return of Writ; State v. Nethers*, 120 Ohio St.3d 1401 (2008). On January 5, 2009, petitioner again filed a motion for delayed appeal with the Ohio Supreme Court. *Exhibits 14, 15 to Return of Writ*. On February 18, 2009, the Ohio Supreme Court denied his motion for delayed appeal. *State v. Nethers*, 120 Ohio St.3d 1523 (2009).

On April 24, 2009, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Trial counsel's failure to have appellant's mental condition or psychiatric condition evaluated to determine his competency to stand trial resulted in ineffective assistance of counsel.
>
> 2. Petitioner's statutory rights and due process rights were violated upon failure to have his mental state evaluated.
>
> 3. Petitioner has been sentenced in contravention of the Ohio Supreme Court's holding in *State v. Pelfrey*, 112 Ohio St.3d 422
> . . . .

It is the position of the respondent that petitioner's claims are procedurally defaulted.

7

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must

be decided whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*

Here, petitioner properly raised his claims on direct appeal; however, he failed to file a timely appeal of the appellate court's June 4, 2008, decision to the Ohio Supreme Court. Although the Ohio Supreme Court granted petitioner's subsequent motion for delayed appeal, the Ohio Supreme Court subsequently sua sponte dismissed the appeal for failure to prosecute because petitioner failed to file a timely memorandum in support that complied with the Rules of the Ohio Supreme Court. "In so ruling, the court clearly and expressly relied on both an independent and adequate state ground stemming from petitioner's noncompliance with the court's well-established and regularly-followed written procedural rules governing the timing and filing of the requisite appeal documents." *Schroyer v. Moore*, 2007 WL 2492312 (S.D. Ohio Aug. 29, 2007); *see also James v. Warden*, 2007 WL 2326867 (S.D. Ohio Aug. 10, 2007)("Dismissals for failure to comply with a court order and for want of prosecution involve a 'firmly established and regularly followed' practice utilized by all courts, not only the courts of Ohio"); *see also Levy v. Ohio*, 2008 WL 339480 (N.D. Ohio Feb. 6, 2008)(noting that *res judicata* bars petitioner from presenting his claims to the Ohio Supreme Court under these circumstances). Therefore, he has waived his

9

claims for federal habeas corpus relief.

Petitioner nonetheless may obtain review of his claims on the merits, if he can establish cause for his procedural default as well as actual prejudice from the alleged constitutional violations. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir.2001), citing *Lucas v. O'Dea,* 179 F.3d 412, 418 (6th Cir.1999) (internal citation omitted).

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir.2003); *see also Lundgren v. Mitchell,* 440 F.3d 754, 763-64 (6th Cir.2006), citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Petitioner's *pro se* status or ignorance of the law or of procedural requirements for filing a notice of appeal are insufficient to establish cause to excuse a procedural default. *See Bonilla v. Hurley,* 370 F.3d at 498, citing *Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir.1995). Instead, in order to establish cause, petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley,* 492 F.3d 347, 358 (6th Cir.2007), citing *Jamison v. Collins,* 291 F.3d 380, 386 (6th Cir.2002) (holding that the prosecution's withholding of *Brady* evidence qualified as a "substantial reason for the default that is external to [the petitioner]").

As cause for his procedural default, petitioner asserts that he untimely filed his first

notice of appeal due to the fault of the person assisting him with his legal filings. *Traverse,* at 3. Petitioner states that, after the Ohio Supreme Court granted his motion for delayed appeal, he attempted to file a timely memorandum in support of jurisdiction, but his filing was returned to him for failing to contain a certificate of service or his case number. *See id.*, at 4. Petitioner "rushed" to make these corrections, as his memorandum was due on October 31, 2008. He states that, on October 28, 2008, he gave the legal documents to prison officials at North Central Correctional Institution for mailing; however, the Ohio Supreme Court did not receive those documents until November 3, 2008. *Id.* Petitioner complains that prison officials "dawdl[ed] around" and did not place his legal documents in the mail until October 31, 2008. He "submits that he did everything that he could to file his appeal timely to the Ohio Supreme Court." *Id.* In support of this allegation, petitioner has attached copies of withdrawal slips for postage submitted to prison officials for postage dated July 18, 2008, and October 28, 2008. *Exhibits to Traverse.* Attached to his motion for delayed appeal with the Ohio Supreme Court, petitioner also included a letter to he wrote to the prison's mail clerk asking why his memorandum in support was not received by the clerk of the Ohio Supreme Court until November 3, 2008. The clerk indicated:

> You should not have waited so long to mail it. The cashiers office has to approve your cash slip before I can mail anything. The date stamp on your cash slip will tell you approximately what day it was mailed. The item would have been mailed the next day after your cash slip was stamped.

*Exhibit 15 to Return of Writ.*

11

Failure by prison officials to promptly deliver legal mail may constitute cause for a prisoner's procedural default in failing to timely appeal. In *Maples v. Stegall*, 340 F.3d 433, 438-39 (6th Cir. 2003)(citing *Mohn v. Bock*, 208 F.Supp.2d 796 (E.D. Mich. 2002), concluded that such were the circumstances where the petitioner submitted his legal filings, pursuant to the prison's policy, five days prior to his filing deadline, and attempted to submit it to prison officials at that time; however, inaction by prison officials resulted in Maples' documents being received one day late. In holding that Maples had established cause for his procedural default, the Sixth Circuit noted:

> If the prison had accepted and mailed Maples's petition when he first attempted to deliver it – five days before the state's deadline – we have no doubt that it would have been timely delivered in the normal course of events.

*Id.*, at 439.

Here, however, the record reflects solely that petitioner's legal documents were submitted pursuant to prison policy, and that there was no undue delay. To the contrary, since petitioner had previously waited until July 18, 2008, in submitting his notice of appeal to prison officials for mailing, when the notice of appeal was due July 21, 2008, and his appeal was received one day late, *see Exhibit 11 to Return of Writ,* petitioner was on notice that he needed to submit his legal documents to prison officials more than three days prior to the due date. Instead, he filed a memorandum in support that failed to comply with the Rules of the Ohio Supreme Court, and thereafter apparently submitted his corrected copy to prison officials on October 28, 2008, knowing that the memorandum must be filed by

October 31, 2008. The prison mail clerk's response to petitioner's inquiry further indicates that petitioner's legal documents were sent out according to regular prison policy. He therefore has failed to establish cause for his procedural default. *See Donnal v. Sheets*, 2009 WL 3126404 (N.D. Ohio Sept. 24, 2009), concluding that the petitioner had failed to establish cause for his procedural default where he delivered his appeal to the prison mail room

> only three days before the deadline, rather than five days. Therefore, unlike ... *Maples*, this Court cannot say there is "no doubt" the petition would have arrived on time had prison officials acted promptly. Second, there is no evidence in the record suggesting prison officials did not act promptly in mailing Petitioner's materials. The fact that officials did not mail his materials until they ascertained his ability to pay for postage is not evidence of official "inaction." Indeed, Petitioner has not even argued that the prison officials' conduct was contrary to normal prison policy. Petitioner has therefore failed to meet his burden to show cause for the procedural default.

*Id.*, at *3; *see also Lee v. Davis*, 2010 WL 3070060 (E.D. Michigan Aug. 3, 2010)(same).

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within

13

fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

        s/Mark R. Abel  
        United States Magistrate Judge